[Civ. No. 11563. Second Appellate District, Division Two.—November 15, 1937.]

HARRY A. BIGELOW, as Trustee in Bankruptcy, etc., Appellant, v. EDNA COVERT PLUMMER et al., Executrices, etc., Respondents.

Latham, Watkins & Bouchard and George Bouchard for Appellant.

Robert J. Sullivan for Respondents.

CRAIL, P. J.—This is an appeal from a judgment in favor of defendants in an action brought on a claim presented against the estate of decedent and rejected. It was tried on a stipulated set of facts.

We find that the defendant's decedent, Serge Mdivani, cabled Insull Son & Co., Ltd., London, on June 2, 1931, that he was interested in buying shares of Insull Utility common on the instalment plan and for them to wire terms. On June 18, 1931, the London Company wrote Mdivani that as soon as it received instructions to do so it would purchase the shares in the open market, and send him a formal undertaking in writing to the effect that it had purchased the shares for his account, "These shares would not become your property until fully paid for. We would work out that they should be paid for over a period of ten monthly installments, and that you would receive no interest whatsoever or benefit by the dividends . . . until the shares are fully paid for. . . . We do not make a general practice of doing this type of business." On July 2, 1931, Mdivani cabled the London Company to buy 1500 Insull common on the terms outlined above, and on July 3, 1931, the London Company wrote Mdivani that they had secured for his account 1500 shares at $32¾ per share, or a total of $49,125, and that the arrangement is "that you shall pay for these shares in ten equal monthly installments . . . and on completion of these payments the shares will be registered as instructed by you. . . . It is understood that any dividends paid on these shares before you have completed payment will not accrue to you."

On November 10, 1931, the London Company wrote Mdivani setting forth a *résumé* of the above facts and that they had received no response from him. In reply to this Mdivani wrote a letter setting forth that his affairs were in bad shape

and that he could not make any payments at the present time. Not long thereafter Insull Son & Company went into the hands of a liquidator and then into bankruptcy. The stock became of no value. None of the stock was ever delivered to Mdivani and none of the purchase price was paid. A claim was filed against his estate for the full amount of the purchase price with interest, but no instrument upon which the claim was founded was attached to the claim. It was rejected by the defendants. The trial court held that the relation between the London Company and Mdivani was not that of principal and agent but was that of vendor and vendee and that the claim filed by the plaintiffs with the defendants did not comply with section 706 of the Probate Code in that it did not have annexed thereto the necessary contract or copy thereof upon which said claim was purported to be founded, and therefore entered judgment in favor of the defendants. It is from this judgment the appeal is taken.

The plaintiffs contend that the London Company and Mdivani occupied the usual relation of broker and customer, i. e., principal and agent and that therefore the claim was not founded upon a written instrument. It is manifest, however, that if the London Company was selling the stock to Mdivani on the instalment plan and the relation of vendor and vendee applied to the transaction, that to render the claim as set forth herein as valid under the statute of frauds, section 1624a of the Civil Code, no deliveries having been made of the personal property sold nor anything ever given or paid to bind the contract, there must have existed some note or memorandum in writing of the contract of sale signed by the decedent. Such a writing would be the equivalent of the written instrument mentioned in section 706 of the Probate Code.

The question whether the parties occupied the relation (1) of principal and agent or (2) vendor and vendee is ordinarily a question of fact to be determined by the fact finder. Only where the evidence on the issue is clear and undisputed is it a question of law for the court to decide. (55 C. J. 43.) ''Where, as in this case, the facts and circumstances in evidence may reasonably authorize either one of two opposite inferences and the trial court has adopted one and rejected the other, its decision is binding upon the appellate court, the case being in substance the same as where the trial court

decides upon the weight of contradictory evidence.'' (*Boland* v. *Gosser*, 5 Cal. App. (2d) 700 [43 Pac. (2d) 559], and cases cited.)

In the instant case there is substantial evidence from which the inference may reasonably be drawn that the transaction was an unusual one wherein the London Company purchased the stock and owned it and had entered into an instalment contract of sale with Mdivani, and this court under the circumstances may not upset the findings of the trial court. Under such facts the duty to annex the note or memorandum to the claim was mandatory (*Estate of Steuer*, 77 Cal. App. 584, 585 [247 Pac. 211]; *State of Montana* v. *District Court*, 90 Mont. 281 [1 Pac. (2d) 335, 76 A. L. R. 1371] at 1373), and it follows that the claim being fatally defective cannot be enforced by action thereon. (*Bank of Sonoma County* v. *Charles*, 86 Cal. 322 [24 Pac. 1019]; *Stockton Sav. Bank* v. *McCown*, 170 Cal. 600 [150 Pac. 985].)

Judgment affirmed.

McComb, J., concurred.

Wood, J., dissented.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 8, 1937, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 14, 1938.